UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OBESITY ACTION COALITION,

                         Plaintiff,

      vs.

HEALTHPLUS HP, LLC,
EMPIRE HEALTHCHOICE HMO INC., and
EMPIRE HEALTHCHOICE ASSURANCE, INC.

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.: 1:19-cv-03491 (JGK)

**COMPLAINT**

Plaintiff, Obesity Action Coalition, Inc., by its attorneys, Garfunkel Wild, P.C., alleges as follows:

## INTRODUCTION

1.     This action is brought to prevent further discrimination by Defendants Healthplus HP, LLC, Empire Healthchoice HMO Inc., and Empire Healthchoice Assurance, Inc. (collectively "Defendants") against members of the Obesity Action Coalition based on those members' disability; specifically, Defendants' requirement that insureds (or their beneficiaries) suffering with Class II and Class III obesity provide documentation of an attempt to lose weight through a structured diet program for a minimum of six months before obtaining authorization for bariatric surgery.

2.     This medically unnecessary preoperative condition, which Defendants applies uniquely to patients suffering with obesity, bars those patients from the full and equal enjoyment of services provided by a place of public accommodation in violation of Title III of the Americans With Disabilities Act, as well as provisions of the New York State Human Rights

1

Law and the New York City Human Rights Law, while causing significant loss of enjoyment of life and irreparable harm to Obesity Action Coalition members who are insured by Defendants.

3.     Based on the foregoing, the Obesity Action Coalition seeks a declaration that Defendants' policy requiring a structured diet program – prior to providing authorization for bariatric surgery - violates: (a) Title III of the Americans with Disabilities Act (42 U.S.C. §§ 12101-203); (b) New York Executive Law § 296; and (c) New York City Administrative Code § 8-107.

4.     Plaintiff also seeks a permanent injunction prohibiting Defendants from continuing their discriminatory practices under the above-referenced statutes and requiring Defendants to take affirmative action to correct the discriminatory conduct. Plaintiff finally seeks an award of attorneys' fees (as permitted by statute), and such further relief as the court may deem just and proper.

## JURISDICTION AND VENUE

5.     Jurisdiction of this Court is proper under 28 U.S.C. § 1331 providing for original jurisdiction by federal courts over "a claim or right arising under" the laws of the United States.

6.     This Court also has jurisdiction over the state and local law claims pursuant to 28 U.S.C. § 1367, which provides for supplemental jurisdiction over state and local law claims that form part of the same case or controversy as claims over which the federal courts have original jurisdiction.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because Defendants are each New York business corporations with their principal places of business located in New York County.

## **PARTIES**

8.      Plaintiff Obesity Action Coalition, Inc. ("OAC") is an Ohio not-for-profit corporation that is registered to operate in New York.

9.      OAC's principal place of business at 4511 North Himes Avenue, Suite 250, Tampa, Florida 33614.

10.     OAC's principal county of business in New York is New York County.

11.     Defendant Healthplus HP, LLC is a domestic limited liability company registered to do business in New York, with its Registered Agent located at 28 Liberty Street, New York, New York 10005.

12.     Defendant Empire Healthchoice HMO, Inc. is a New York business corporation with its principal place of business in New York County.

13.     Defendant Empire Healthchoice Assurance, Inc. is a New York business corporation with its principal place of business located in New York County.

## **FACTS COMMON TO ALL CLAIMS**

### **The Obesity Action Coalition And The Obesity Epidemic:**

12.     OAC is a national not-for-profit organization, with over 59,000 members -- including thousands in New York State -- operating exclusively to improve the lives of individuals affected by the disease of obesity.

3

13.     OAC's mission is to raise awareness and improve access to the prevention and treatment of obesity, as well as to provide evidence-based education on obesity and its treatments.

14.     OAC also advocates on behalf of its 59,000 members toward the elimination of weight bias and discrimination in the workplace and public accommodations, and to foster a heightened awareness of the obesity epidemic and its impact on public health.

15.     There are currently more than 93 million Americans affected by the disease of obesity, accounting for more than 300,000 deaths annually in the United States.

16.     In addition to these dire health consequences, the yearly economic impact of adult obesity in the United States is estimated at more than $315 billion in direct medical costs.

17.     Based on the foregoing, it is critical that patients with obesity and severe obesity have equal access to potentially life-saving bariatric surgical procedures.

18.     Bariatric surgery, in its multiple forms, has been proven safe and remains the most effective and durable long-term treatment for clinically severe obesity with a documented reduction in all-cause mortality and long-term survival benefit.

**Obesity Is A Recognized Disability**

        **A.**     **Obesity Is A Disability Under The American's With Disabilities Act**

19.     Title III of the American's With Disabilities Act ("ADA") (42 U.S.C. §§ 12101-213) proscribes discrimination against a disabled individual in public accommodations, mandating that "no individual shall be discriminated against on the basis of disability in the full

4

and equal enjoyment of the goods, services, facilities privileges, advantages or accommodation of any place of public accommodation by any person who owns... or operates a place of public accommodation."

20.     The scope of qualified "disabilities" under the ADA was significantly expanded by the ADA Amendments Act of 2008 (effective January 1, 2009) (ADAAA), which defines "disability" as: "with respect to an individual: (i) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (ii) a record of such impairment; or (iii) being regarded as having such an impairment. . ." U.S. DOJ Title III Reg. Supp. at § 36.105(a).

21.     The ADA Regulations dictate further that "disability" is to be broadly defined in actions commenced under the statute, and that the law's focus is on the alleged discriminatory conduct as opposed to the disability complained of:

> The primary purpose of the ADA Amendments Act is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the ADA Amendment Act's purpose for reinstating a broad scope of protection under the ADA, the definition of 'disability' in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA. The primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of "disability'. The question of whether an individual meets the definition of 'disability' under this part should not demand extensive analysis. US. DOJ, Title III, Reg. Supp. at §36.101(b).

22.     Obesity qualifies as disability under the ADA, the ADAAA (and the regulations thereto), and has been recognized as such in various federal court rulings.

**B.      Obesity Is A Disability Under New York State Anti-Discrimination Laws**

23.     The New York Human Rights Law (New York Executive Law § 296 -2 (a)) deems it unlawful for "any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of... disability... directly or indirectly to refuse, withhold or deny to any such person any of the accommodations, advantages, facilities or privileges thereof... to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld or denied to any person on account of... disability..."

24.     Similarly, the New York City Human Rights Law (New York Administrative Code § 8-107(4)(2)(a)) mandates that "[I]t shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation . . . directly or indirectly to make any declaration, publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement to the effect that: Full and equal enjoyment, on equal terms and conditions, if any of the accommodations, advantages, facilities and privileges of any such place or provider of public accommodation shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, age, gender [or] disability . . .."

25.     Obesity qualifies as a disability under the New York Human Rights Law and the New York City Human Rights Law, and has been recognized as such in various court decisions.

6

**Insurance Providers Are Places Of Public Accommodation**

26.     Insurance offices and, more generally, insurance providers, are places of public accommodation and liable to their insured members (and their beneficiaries) for discriminatory coverage requirements.

27.     More specifically, an insurance office or insurance provider – such as Defendants - is prohibited from discriminating against a class of disabled insureds (such a patients suffering with Obesity) by conditioning their access to surgical procedures on the fulfillment of preoperative requirements that are not mandated of non-disabled patients.

28.     The prohibition against discrimination in a public setting applies equally to an insurance company and the coverage offered within its policies.

29.     Defendants are insurance providers and thus public accommodations under the ADA, the New York State Human Rights Law, and the New York City Human Rights Law.

**Defendants' Discriminatory Bariatric Surgery Coverage Policies**

30.     Unlike coverage offered for other potentially life-threatening diseases, Defendants do not provide universal health coverage for treatment of obesity.

31.     Instead, Defendants' policy for Bariatric Surgery and Other Treatments for Clinically Severe Obesity (covering gastric bypass and other gastric restrictive procedures) imposes an arbitrary, rigid and discriminatory preoperative diet requirement that must be satisfied before an insured (or a beneficiary) suffering from the disease of obesity can qualify for a bariatric surgical procedure.

7

32.     Defendants' Bariatric Surgery policy (last reviewed as of January 24, 2019 and published on January 31, 2019) imposes the following requirement on patients (adults and adolescents) with Class II and Class III obesity before they will be authorized to undergo bariatric surgery: "Documentation of . . . past participation in a weight loss program. The individual must have actively participated in the program for at least 6 continuous months in the 2 years prior to surgery."

33.     Defendants' preoperative diet requirement is discriminatory and a restriction on an insured's (or beneficiaries') full use and enjoyment of a public accommodation in violation of State and federal law.

34.     Upon information and belief, Defendants do not place the same or similar restrictions on insureds who seek authorization for other life-saving, medically necessary surgical procedures.

35.     Worse, expert practitioners focusing on the risks and benefits of bariatric surgery agree that there is no demonstrable benefit to a patient with obesity who is subjected to a pre-surgery diet, with regard to either the success or safety of the procedure or post-surgery outcomes.

36.     Indeed, the experts acknowledge that insurance-based pre-surgical diets for patients with obesity seeking bariatric surgery are not only medically unnecessary, they pose a substantial risk of harm to the patient because diet preconditions, which are strictly enforced by insurance carriers – such as Defendants – do not consider the severity of the patient's obesity or life circumstances that may force a patient to miss a required doctor appointment or to deviate

8

from the diet plan (and, consequently, being denied authorization for potentially life-saving bariatric surgery).

37.     The preoperative conditions also disregard additional costs associated with the pre-surgical diet requirement (which may not be covered by Defendants) and which may make compliance with the condition impossible for some OAC members.

38.     That being the case, compulsory preoperative diets prior to bariatric surgery authorization often lead to patient attrition and delay in critical obesity treatment, leading to progression in patient obesity and worsening of life-threatening conditions triggered by the patient's weight (such as diabetes and heart disease).

39.     OAC members – including thousands in New York –have been and will continue to be irreparably harmed by the delay in treatment of their obesity as a result of Defendants' preoperative diet requirement.

## FIRST CLAIM FOR RELIEF

41.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained above, as if more fully set forth at length herein.

42.     Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, states that "[N]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

9

43.     The expansive definition of "disabilities" as modified by the ADAAA includes: "(i) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (ii) a record of such impairment; or (iii) being regarded as having such an impairment . . ." U.S. DOJ Title III Reg. Supp. at § 36.105(a).

44.     OAC's members – suffering with obesity - are disabled individuals within the meaning of the ADA and the ADAAA.

45.     An "insurance office" is a 'place of public accommodation' under Title III of the ADA. 42. U.S.C. § 121; 81(7)(F); 28 C.F.R. § 36.104.

46.     The prohibition against an insurance office engaging in accts of discrimination in a public setting applies equally to the insurance carrier and the coverage offered within its policies.

47.     An insurance company – such as Defendants – acts in a discriminatory fashion if it denies an application for insurance to a patient based on their disability.

48.     Defendants have discriminated, and continue to discriminate, against OAC's members by failing to provide full and equal enjoyment of their goods, services, facilities, privileges, advantages, or accommodations in violation of 42 U.S.C.A. §§ 12182 and 12184 and their implementing regulations at 28 C.F.R. Pt. 36 and 49 C.F.R. Pt. 37 and 38.

49.     Specifically, Defendants have discriminated, and continue to discriminate, against OAC's members by requiring those members - who are insured by Defendants – and who suffer with Class II or Class III obesity to undergo a preoperative diet requirement prior to receiving authorization to undergo a bariatric surgical procedure.

10

50.     Defendants' policy denies OAC's members who are insured by Defendants of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation in violation of 42 U.S.C.A. §§ 12182 and 12184 and their implementing regulations at 28 C.F.R. Pt. 36 and 49 C.F.R. Pt. 37 and 38.

51.     Upon information and belief, Defendants do not impose similarly restrictive preoperative requirements on insureds afflicted with other potentially life-threatening illness or disability.

52.     Defendants' conduct constitutes ongoing and continuous violations of the ADA. Unless restrained from doing so, Defendants will continue to act in a discriminatory fashion.

53.     Through their discriminatory conduct, Defendants have caused and will continue to cause OAC's members, who are insured by Defendants, and who seek authorization for a bariatric surgical procedure, immediate and irreparable injury because those insureds have to wait at least 6 months before such authorization can be provided, subjecting those insureds to myriad and escalating health complications related to their obesity.

54.     Based on the above, OAC is entitled to a permanent injunction prohibiting Defendants from continuing to require insureds suffering from obesity to complete a 6-month preoperative diet before the patient can receive authorization to undergo bariatric surgery.

55.     OAC is also entitled to recover its attorneys' fees and costs as a result of Defendants' violation of the ADA and ADAAA. 42 U.S.C. § 12188.

## SECOND CLAIM FOR RELIEF

56.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained above, as if more fully set forth at length herein.

57.     The New York Human Rights Law (Executive Law § 296 (2)(a)) ("NYSHRL") deems it unlawful for "any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of . . . disability . . . directly or indirectly to refuse, withhold or deny to any such person any of the accommodations, advantages, facilities or privileges thereof . . . to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld or denied to any person on account of . . . disability . . ."

58.     OAC's members – suffering with obesity - are disabled individuals within the meaning of the NYSHRL.

59.     An "insurance office," such as Defendants' places of business here, are each a 'place of public accommodation' under the New York Human Rights Law (Executive Law § 296 (2)(a)).

60.     The prohibition against an insurance office engaging in accts of discrimination in a public setting applies equally to the insurance carrier and the coverage offered within its policies.

61.     An insurance company – such as Defendants – acts in a discriminatory fashion if it denies an application for insurance to a patient based on their disability.

12

62.     Defendants have discriminated, and continue to discriminate, against OAC's members by failing to provide full and equal enjoyment of their accommodations, advantages, facilities or privileges thereof in violation of the NYSHRL.

63.     Specifically, Defendants have discriminated, and continue to discriminate, against OAC's members by requiring those members - who are insured by Defendants – and who suffer with Class II or Class III obesity to undergo a preoperative diet requirement prior to receiving authorization to undergo a bariatric surgical procedure.

64.     Defendants' policy denies OAC's members who are insured by Defendants of the full and equal enjoyment of the accommodations, advantages, facilities or privileges thereof in their public accommodation in violation of NYSHRL.

65.     Upon information and belief, Defendants do not impose similarly restrictive preoperative requirements on insureds afflicted with other potentially life-threatening illness or disability.

66.     Defendants' conduct constitutes ongoing and continuous violations of the NYSHRL. Unless restrained from doing so, Defendants will continue to act in a discriminatory fashion.

67.     Through their discriminatory conduct, Defendants have caused and will continue to cause OAC's members, who are insured by Defendants, and who seek authorization for a bariatric surgical procedure, immediate and irreparable injury because those insureds have to wait at least 6 months before such authorization can be provided, subjecting those insureds to myriad and escalating health complications related to their obesity.

13

68. Based on the above, OAC is entitled to a permanent injunction prohibiting Defendants from continuing to require insureds suffering from obesity to complete a 6-month preoperative diet before the patient can receive authorization to undergo bariatric surgery.

69. OAC is also entitled to recover its attorneys' fees and costs.

## AS AND FOR A THIRD CLAIM FOR RELIEF

70. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained above, as if more fully set forth at length herein.

71. New York Administrative Code (New York City Human Rights Law) § 8-107(4)(a)(1) states that "[I]t shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: Because of any person's actual or perceived . . . disability."

72. New York Administrative Code (New York City Human Rights Law) § 8-107(4)(a)(2) further states that "[I]t shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: . . . Directly or indirectly to make any declaration, publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement."

73. OAC's members – suffering with obesity - are disabled individuals within the meaning of the NYCHRL.

14

74.     An "insurance office," such as Defendants' places of business here, is a 'place or provider of public accommodation' under the New York Administrative Code (New York City Human Rights Law).

75.     The prohibition against an insurance office engaging in accts of discrimination in a public setting applies equally to the insurance carrier and the coverage offered within its policies.

76.     An insurance company – such as Defendants – acts in a discriminatory fashion if it denies an application for insurance to a patient based on their disability.

77.     Defendants have discriminated, and continue to discriminate, against OAC's members by failing to provide full and equal enjoyment of their accommodations, advantages, facilities or privileges thereof in violation of the NYCHRL.

78.     Specifically, Defendants have discriminated, and continue to discriminate, against OAC's members by requiring those members - who are insured by Defendants – and who suffer with Class II or Class III obesity to undergo a preoperative diet requirement prior to receiving authorization to undergo a bariatric surgical procedure.

79.     The above policy denies OAC's members who are insured by Defendants of the full and equal enjoyment of the accommodations, advantages, facilities or privileges thereof in their public accommodation in violation of NYCHRL.

80.     Upon information and belief, Defendants do not impose similarly restrictive preoperative requirements on insureds afflicted with other potentially life-threatening illness or disability.

15

5336951v.2

81.     Defendants' conduct constitutes ongoing and continuous violations of the NYSHRL. Unless restrained from doing so, Defendants will continue to act in a discriminatory fashion.

82.     Through their discriminatory conduct, Defendants have caused and will continue to cause OAC's members, who are insured by Defendants, and who seek authorization for a bariatric surgical procedure, immediate and irreparable injury because those insureds have to wait at least 6 months before such authorization can be provided, subjecting those insureds to myriad and escalating health complications related to their obesity.

83.     Based on the above, OAC is entitled to a permanent injunction prohibiting Defendants from continuing to require insureds suffering from obesity to complete a 6-month preoperative diet before the patient can receive authorization to undergo bariatric surgery.

84.     OAC is also entitled to recover its attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF

86.     OAC repeats, reiterates, and re-alleges each and every allegation contained above, as if more fully set forth at length herein.

87.     OAC contends, and is informed and believes, that Defendants deny failing to comply with applicable laws prohibiting discrimination against persons with disabilities in violation of the ADA, ADAAA, NYSHRL, and NYCHRL.

88.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

16

89.     OAC is entitled to a declaration that Defendants' 6-month preoperative diet condition placed on OAC members seeking authorization for bariatric surgery is discriminatory under Article III of the ADA and New York State law.

**WHEREFORE**, the Plaintiff, Obesity Action Coalition, Inc. requests that the Court: (a) enter such declaratory and injunctive relief under Title III of the ADA and the ADAAA, New York Human Rights Law and New York City Human Rights Law against the Defendants to prevent the Defendants from continuing to discriminate against insureds suffering from the disease of obesity in a place of public accommodation; (b) enter an order prohibiting the Defendants from continuing to require insured patients suffering with the disease of obesity from having to comply with a 6-month preoperative diet before the insured can seek authorization for a bariatric surgical procedure; (c) awarding the Plaintiff its reasonable attorneys' fees, costs, and disbursements of this action; and (d) awarding the Plaintiff such other and any further relief that the Court deems appropriate.

Dated: Great Neck, New York
       July 15, 2019

                                   GARFUNKEL WILD, P.C.
                                   *Attorneys for Plaintiff*

                                   By:   */s/ Roy W. Breitenbach*
                                         Roy W. Breitenbach

                                   111 Great Neck Road
                                   Great Neck, New York 11021
                                   (516) 393-2200

TO    **VIA ECF**
        HOGAN LOVELLS US LLP
        *Attorneys for Defendants*
        390 Madison Avenue
        New York, New York 10017

17

5336951v.2